

# SEALED

**Office of the United States Attorney**
District of Nevada
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

FILED

2010 JUL 28  PM 4: 51

U.S. MAGISTRATE JUDGE

BY_____

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Melissa HACK<br><br>　　　　Defendant. | Case No.: 2:10-mj-519-GWF<br><br>COMPLAINT for violation of<br>Title 18 U.S.C. § 1001 |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned complainant, being first duly sworn, deposes and says:

## COUNT ONE
### (18 U.S.C.1001-False Statement)

On or about June 16, 2010, in the State and Federal Judicial District of Nevada, **Melissa HACK**, defendant herein, did willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, specifically the executive branch of the Government of the United States, a materially false, fictitious, and fraudulent statement and representation, in violation of Title18, United States Code, Section 1001.

　　1.　　Complainant, Fred Merrick, is a Federally Deputized Task Force Officer with the Federal Bureau of Investigation, states the following as and for probable cause.

2. Complainant is a Detective with the Violent Crimes Section of Las Vegas Metropolitan Police Department and has been so for the past three and one-half years. My primary duties include investigating cold case homicides, attempted murders, batteries with a deadly weapon, batteries with substantial bodily harm, batteries on a police officer and mayhem. Complainant was deputized approximately one year ago as a Temporary Federal Agent (TFO) to work with the Federal Bureau of Investigation (FBI) on a cold case, double-homicide that occurred in 1998 on federal land and involved subjects who were identified with one or more neo-Nazi Skinhead groups.

2. The following information is either the result of Complainant's own personal investigation, or has been provided to me by other law enforcement personnel:

    a. On July 4, 1998, in the desert north of downtown Las Vegas, Nevada, the body of Daniel Shersty was found by several individuals riding off-road vehicles. Investigators determined that Shersty was shot to death. Approximately two days later, the body of Shersty's friend or acquaintance, Lynn Newborn, was found shot to death in the same area. The investigation identified several subjects who were suspected of luring the victims into the desert the night they were killed.

    b. A subject identified as John (Jackie) Butler was eventually convicted of the murders and is presently incarcerated in the Nevada State Prison System. None of the other subjects involved in the murders was ever tried. During the course of this investigation, your Complainant identified Melissa HACK as an associate and former girlfriend of Butler. Your Complainant also learned that HACK associated with a neo-Nazi Skinhead group called the Independent Nazi Skinheads (INS), and that INS members and HACK'S brother, Ross Hack, also a neo-Nazi Skinhead, had been feuding with Lynn Newborn, an African American male, prior to Newborn's

murder in 1998. Based upon the investigation into the murders, HACK is considered to be a subject.

   c.   On June 16, 2010, HACK arrived at the Nevada State Parole and Probation Office ("the Office"), at 215 East Bonanza Road Las Vegas, Nevada, for a meeting with her Parole and Probation Officer Lorin Correll, who was supervising HACK on unrelated narcotics charges. HACK was introduced to your Complainant and FBI Special Agent Kevin Sheehan, who wished to question HACK about the circumstances surrounding the 1998 murders and, relative to the investigation, collect major case finger prints and DNA from HACK pursuant to a federal search warrant issued by United States Magistrate Judge Foley in 2:10- mj-399-GWF(Sealed).

   d.   After Agent Sheehan went through and FBI advice of rights form with HACK, your Complainant heard HACK say, "I don't sign anything without my attorney reading it," or words to that effect. HACK refused to sign the form. Thereafter, Agent Sheehan asked HACK if she had her cell phone with her. HACK responded that she had no cellular telephone with her at the Parole and Probation Office and that she had brought no other personal items with her. HACK told Merrick and Sheehan that she had left her phone and personal belongings at her work. Agent Sheehan asked HACK how she got to the Probation Office, to which HACK responded that a friend, who was waiting in the lobby of the Office, had driven her. Agent Sheehan asked HACK again about the cell phone and if she had left the phone at her workplace. HACK then requested to speak to her attorney.

   e.   As Agent Sheehan and Detective Merrick proceeded to execute the search warrant, Nevada Parole and Probation Officer L. Correll returned and requested to see HACK's cellular telephone. This is customary practice for Parole and Probation, Risk Control Unit subjects, who are documented gang members (like HACK). Again, HACK stated she left the telephone at work and that she had no car as she received a ride from a co-worker whom she identified as Kent

1  Sloan. HACK stated that Sloan was waiting in the lobby for her. When questioned further, HACK
2  again stated she had no telephone or other personal items with her.

3        f.      Thereafter, Parole and Probation Officer Correll and LVMPD Det. Kirk
4  Jordan proceeded to the Parole and Probation lobby and met a white male adult who identified
5  himself verbally as Ken Sloan. Sloan stated that he works with HACK and had given HACK a ride
6  to the Parole and Probation Office. Sloan was informed that there was a delay and that HACK could
7  be at the Office for a longer period of time than originally anticipated. Sloan declined to wait.
8  Parole and Probation Officer Correll asked Sloan if HACK had left any property in his vehicle.
9  Sloan stated, "Yes," that HACK had placed something in the center console. Parole and Probation
10 Officer Correll asked if he could check the console, and Sloan agreed. Officer Correll and Detective
11 Jordan discovered in the console a cellular telephone containing photographs of HACK and
12 numerous additional individuals she visibly appeared to associate with. Some of the individuals bore
13 tattoos of signs and symbols that could be relevant to the 1998 murder investigation. Additionally,
14 in the floor board of the front passenger seat was a cloth and miscellaneous items. Under these items
15 was a wallet containing HACK's identification.

16       g.      With the recovery of Melissa HACK's cellular telephone and wallet from
17 Sloan's vehicle at the Nevada Parole and Probation Office, your Complainant, based upon his
18 training and experience, believes that Melissa HACK intended to keep these items, particularly the
19 cell-phone, from law enforcement personnel.

. . .

. . .

. . .

4

Based on the aforementioned facts included herein, your Complainant believes there is probable cause that Melissa HACK did willfully and knowingly make and cause to be made, a materially false, fictitious, and fraudulent statement and representation about the location of her cell phone in an effort to keep it from federal law enforcement personnel, and for this reason intentionally misled Complainant and Agent Sheehan when she asserted that she had left her cell-phone at her office, in violation of 18 U.S.C. § 1001.

Fred Merrick
Federal Task Force Officer

SUBSCRIBED and SWORN to before me this 28th day of July 2010.

George W. Foley
UNITED STATES MAGISTRATE JUDGE